Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Feb 11 2014, 6:19 am

Kevin S. Smith

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT J.N.:

**MEGAN B. QUIRK**
Quirk, Rivers & Hunter
Muncie, Indiana


ATTORNEYS FOR APPELLANT M.R.:

**MARK A. DELGADO**
**KEVIN R. LESLIE**
Monticello, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Office of the Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF H.R. (Minor Child) and <br><br> J.N. (Mother) and M.R. (Father), <br><br>     Appellants-Respondents, <br><br>         vs. <br><br> INDIANA DEPARTMENT OF CHILD SERVICES, <br><br>     Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 38A05-1305-JT-206<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Brian D. Hutchison, Judge
Cause No. 38C01-1301-JT-1

**February 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

J.N. ("Mother") and M.R. ("Father") appeal a trial court judgment terminating their parental relationships with their minor child H.R. Finding the evidence sufficient to support the trial court's determination, we affirm.

## Facts and Procedural History

On August 24, 2011, Mother gave birth prematurely to H.R. Both Mother and H.R. tested positive for methamphetamine ("meth") at that time. The Department of Child Services ("DCS") detained H.R. Police arrested Mother and Father at their home and discovered a meth lab inside the home. The two were incarcerated and charged with meth manufacturing. Father was out on bond pending his plea agreement, and Mother has been incarcerated throughout the proceedings. Both pled guilty to class B felony meth manufacturing. Both admitted to using illegal drugs for about twenty years and to operating a meth lab. Father admitted that he had been manufacturing meth for about fifteen years.

After H.R.'s release from the hospital on September 2, 2011, DCS placed H.R. in foster placement with his half-sister (Father's daughter) and her husband. The sister was a registered nurse and attended to his medical complications, which included low body temperatures and low blood sugar.

At some point that fall, DCS filed a petition seeking to have H.R. designated a child in need of services ("CHINS").[1] On November 15, 2011, the trial court issued a disposition and

---

[1] The CHINS petition is not included in the record. However, the parties do not dispute the CHINS determination.

parental participation order. While he was out on bond, Father participated in a fatherhood engagement program and visited H.R. about once a week. When he was placed in the Department of Correction ("DOC"), he participated in two phases of a substance abuse course and communicated with H.R. through letters. Although Mother had a few visits with H.R. while she was in the county jail, she communicated mainly through letters and cards. While she was in the DOC, she completed classes in substance abuse, parenting, and general education (and obtained her GED).

H.R. has continued in his relative placement and suffers from delayed speech. He participates in in-home speech therapy. He is bonded with his foster parents, whom he refers to as "mama" and "dada," and is closely bonded with their four-year-old twins. Tr. at 107. In October 2012, DCS recommended that the permanency plan change from reunification to termination with adoption by the foster parents. Although guardianship was discussed as a contingency, the foster parents sought adoption. On January 14, 2013, DCS filed a petition for involuntary termination. Following an April 3, 2013 evidentiary hearing, the trial court issued an order terminating Mother's and Father's parental relationships with H.R. Both parents appeal. Additional facts will be provided as necessary.

### Discussion and Decision

Mother and Father challenge the sufficiency of evidence to support the trial court's judgment terminating their parent-child relationships with H.R. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we review for clear error, applying a two-tiered standard of review wherein

3

we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re M.W.*, 943 N.E.2d 848, 853 (Ind. Ct. App. 2011), *trans. denied*. We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.*

In *Bester*, our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*Id.* (citations, quotation marks, and alteration omitted).

To obtain a termination of the parent-child relationship between Mother and Father and H.R., DCS was required to establish:

(A)  that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

4

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*. "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted).

5

At the outset, we note that neither Mother nor Father challenges any specific finding of fact. Where the trial court's unchallenged findings clearly and convincingly support its ultimate decision to terminate parental rights, we find no error. *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*.

Here, the trial court's unchallenged findings include, in pertinent part,[2]

8. DCS has established by clear and convincing evidence that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents are not likely to be remedied and that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child and that

   a. Respondent mother:

      i. has engaged in illicit drug use for nearly twenty years;

      ii. has been using methamphetamine for an extended period of time, as well;

      iii. was using methamphetamine while pregnant and continued to use methamphetamine even after being made aware she was pregnant with H.R.; and

      iv. reports it is extremely hard for her not to use methamphetamine.

   b. Respondent father:

      i. has also engaged in illicit drug use for approximately twenty (20) years;

      ii. has been engaged in the manufacture of methamphetamine for approximately fifteen (15) years;

---

[2] The findings refer to H.R. by his first name. We refer to him by his initials.

iii.   provided Respondent mother with methamphetamine; and

   iv.   manufactured methamphetamine in the home where the family was residing when H.R. was born.

c.   The habitual pattern of the parents['] prior conduct relating to drug possession, manufacture, and use indicates a strong probability of future neglect or deprivation of H.R.

d.   H.R.:

   i.   was removed from his parents at age 6 days due to necessity;

   ii.   has developed a close emotional bond with the foster-parents with whom he has resided since September 2011;

   iii.   refers to the foster parents "mama" and "dada"; and

   iv.   is closely bonded with the foster-parents['] twin 4 year old children.

e.   These familial bonds are likely to grow even stronger, as:

   i.   Respondent Mother in [sic] incarcerated and is not presently eligible for release until early 2014; and

   ii.   Respondent father is incarcerated and is not presently eligible for release until late 2014;

f.   H.R.'s emotional development are [sic] threatened by parents retaining parental rights in that he is likely to suffer significant emotional trauma in the event that he is later removed from his present foster-placement.

9.   DCS has established by clear and convincing evidence that termination of the parent-child relationship is in H.R.'s best interests in that[:]

a.   His parents are presently unable to care for him;

7

b.    Termination of the relationship will spare him the emotional trauma likely to occur upon an eventual removal from the [foster parents'] home after nearly 3 years;

c.    No other extended family have made any significant effort to provide him a home;

d.    There is no evidence that H.R. is or will be exposed to illicit drugs, drug abuse, or toxic chemicals while living in the [foster parents'] home;

e.    He is developing satisfactorily in the [foster] home, despite developmental delays which may have been caused by parents' drug use;

f.    The [foster parents] wish to adopt H.R. and appear to be appropriate as adoptive parents in all respects; and

g.    [Foster mother], a nurse, and [foster father], a dentist, are vested with specialized knowledge likely to be beneficial to H.R. in light of his delays.

Mother's App. at 57-58.

### *I. Mother*

Mother asserts that the evidence is insufficient to support the trial court's conclusion that a reasonable probability exists that the conditions that led to H.R.'s removal will not be remedied.[3] When assessing whether there is a reasonable probability that conditions that led to the child's removal will not be remedied, we must consider not only the initial basis for the child's removal, but also the bases for continued placement outside the home. *A.I.*, 825

---

[3] Mother also challenges the trial court's conclusion that there is a reasonable probability that the continuation of her relationship with H.R. poses a threat to his well-being. Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed. Because we find no error concerning the reasonable probability of unremedied conditions, we need not address the threat to the child's well-being.

N.E.2d at 806. Moreover, "the trial court should judge a parent's fitness to care for his [or her] children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* For example, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro*, 842 N.E.2d at 372.

Here, DCS removed H.R. from Mother and Father when he was six days old, after H.R. and Mother both tested positive for meth at H.R.'s birth. Mother later admitted that she had been getting high for the last twenty years, having used meth since age twenty and marijuana since age seventeen or eighteen. For several years, she purchased pseudoephedrine, which she and/or Father would use to manufacture meth. When police arrested both Father and Mother at their home shortly after H.R.'s birth, they discovered a meth lab in the home. Mother and Father both pled guilty to meth manufacturing and are

9

currently incarcerated. Mother's criminal record also includes convictions for marijuana possession and theft. She claims that the trial court improperly based its termination order on the fact that she was incarcerated. However, the unchallenged findings reveal the trial court's concern over the length and frequency of her drug abuse, her participation in manufacturing meth inside her home, her continued use of meth even after she discovered that she was pregnant with H.R., and her admission that it is extremely difficult for her not to use meth.

Mother also challenges the termination order based on DCS's alleged failure to meet its duty to provide services. Because she has been incarcerated throughout the CHINS and termination proceedings, her services and visitation have been limited. The record shows that while incarcerated, she wrote letters to H.R. and participated in DOC classes on substance abuse, parenting, and general education. However, her argument for reversal of the termination order based on DCS's alleged failures to provide services lacks merit. *See In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) (DCS's "failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law.").

In sum, Mother challenges the trial court's emphasis on her pattern of drug abuse and criminal conduct related to it and suggests that her remedial efforts during incarceration should have received more emphasis. These arguments amount to invitations to reweigh evidence, which we may not do. Based on the foregoing, we conclude that the unchallenged findings support the trial court's decision to terminate Mother's parental relationship with H.R. Consequently, we affirm with respect to Mother.

## II. Father

Father challenges the trial court's conclusion that termination of his parental relationship with H.R. is in H.R.'s best interests. Again, we recognize his fundamental liberty interests in parenting H.R., but we are also mindful that his parental interests are not absolute, must be subordinated to H.R.'s interests, and may be terminated if he is unable or unwilling to meet his parental responsibilities. *In re G.Y.*, 904 N.E.2d 1257, 1259-60 (Ind. 2009). Although not dispositive, permanency and stability are key considerations in determining the best interests of a child. *Id*. at 1265. A determination of a child's best interests should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 84 (Ind. Ct. App. 2012).

Father is currently incarcerated following his conviction for meth manufacturing. The unchallenged findings show that he has used illegal drugs for about twenty years and has been manufacturing meth for about fifteen years. He conducted his meth manufacturing operation from a lab in the family's home and estimated that he had manufactured the drug hundreds of times over a five-year period.

Father claims that the trial court improperly based its decision to terminate on how well H.R. was doing in his foster placement. In other words, he asserts that the trial court should have continued H.R. in a foster placement or placed him under guardianship with a goal of reunification instead of ordering termination with a goal of adoption. He cites as support *In re G.Y.*, in which our supreme court reversed a trial court order terminating the parental rights of an incarcerated mother where the child had a stronger bond with the foster

parents and where the mother had made a good-faith effort to better herself while in prison. 904 N.E.2d 1262-65.

Here, H.R. has been in the same relative placement (with his half-sister and her husband) since he was six days old. In addition to having strong bonds with his foster parents and with their twin four-year-olds, he has physical conditions that require special attention. He was born prematurely and tested positive for meth at birth. He also suffered from low body temperature and low blood sugar. He continues to suffer from delayed speech. His sister/foster mother is a registered nurse, and his foster father is a dentist. They are exceptionally qualified to tend to his special needs, and the sister/foster mother is overseeing his in-home speech therapy. His placement is pre-adoptive, and his sister/foster mother testified that she and her husband sought adoption and not merely guardianship over H.R. because they wanted him to have "stability and "good role models in his life" and to be "a contributing member of society." Tr. at 120. The sister/foster mother emphasized that she desires to adopt H.R. because of "my experience having [Father] as a father. I didn't want that for [H.R.] …. I didn't have the stable father growing up and I wanted that for [H.R.]". *Id*. at 122. She also testified concerning an incident that occurred when she was twelve years old in which she found drug paraphernalia in her father's glove compartment and asked him about it, and he yelled at her to stay out of there. *Id*. at 112.

Moreover, both the guardian ad litem and the DCS case manager Joy Woolf recommended termination and adoption. Woolf testified that termination would be in H.R.'s best interests because H.R. "has lived with [the foster parents] from the day he was released

12

from the hospital after his birth. That is the only family he knows. He is very bonded with them. I've been to the home. I'm [sic] observed him with the [foster parents'] children and [the foster parents] and that is his home." Tr. at 30. Given the trial court's discretion to determine the credibility of witnesses, we cannot say that the trial court erred in giving credence to the professional opinions regarding H.R.'s best interests. *See In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) ("the testimony of service providers may support a finding that termination is in the child's best interests.").

In sum, recent remedial efforts notwithstanding, Father clearly has a substance abuse problem that has continued for many years. It negatively affected his parenting in the past and does not bode well for his future prospects. His arguments concerning H.R.'s best interests amount to invitations to reweigh evidence and assess witness credibility, which we may not do. Based on the foregoing, we affirm the trial court's decision to terminate Father's parental relationship with H.R.

Affirmed.

NAJAM, J., concurs.

BAKER, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE )
INVOLUNTARY TERMINATION OF THE )
PARENT-CHILD RELATIONSHIP OF )
H.R. (Minor Child) and )
)
J.N. (Mother) and M.R. (Father), )
)
    Appellants-Respondents, )
)
        vs. )    No. 38A05-1305-JT-206
)
INDIANA DEPARTMENT OF CHILD )
SERVICES )
)
    Appellee-Petitioner. )

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Brian D. Hutchison, Judge
Cause No. 38C01-1301-JT-1

**BAKER, Judge, concurring in result,**

While I concur in the result, I do so with reservations. Although I agree with the majority's finding that sufficient evidence existed to support the trial court's decision to terminate the parental rights of Mother and Father, I find certain aspects of this matter disconcerting. Mother and Father were allowed to pursue parenting and substance abuse

classes, which they took part in with the aim of being reunited with their child. However, their participation in and contemplation of these classes did not avail them of anything with regard to their goal. It is one thing to terminate the parental rights of Mother and Father based on the factors listed by the majority, but it is entirely different to allow Mother and Father to work towards reunification, doing everything that is asked of them, and to then terminate their parental rights regardless of their cooperation.

While the majority correctly identified that, in terminating their parental rights, the trial court considered factors other than Mother's and Father's incarceration, those factors all seem to relate to the use or manufacture of methamphetamines. While they may not be losing their parental rights due to their incarceration, it does seem that they may be losing these rights due to the behavior for which they are now incarcerated. The purpose of terminating parental rights is not to punish parents, but to protect children. In Re Termination of Parent-Child Relationship of D.D., 804 N.E.2d 258, 265 (Ind. Ct. App. 2004). Here, there appears to be an element of punishment. I cannot find cause to overturn the trial court's judgment in this matter, but in light of Mother and Father's compliance, the termination of parental rights does not conform to my sense of justice.